UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-23194-ALTMAN/Reid

**MSP RECOVERY CLAIMS,**
**SERIES LLC,** *et al.*,

    *Plaintiffs*,

v.

**SECURITY NATIONAL**
**INSURANCE COMPANY**,

    *Defendant.*

_____/

## ORDER GRANTING MOTION TO REMAND

The Plaintiffs have filed a Motion to Remand [ECF No. 12]—which, after careful review, we **GRANT in part** and **DENY in part**.[1]

### THE FACTS

On December 20, 2018,[2] the Plaintiffs (MSP Recovery Claims, Series LLC; MSPA Claims 1, LLC; and Series PMPI) sued two Defendants (Security National Insurance Company and General Security National Insurance Company) in the Circuit Court of the Eleventh Judicial Circuit in and for

---

[1] The Motion to Remand is ripe for resolution. The Defendant filed its Response to the Plaintiffs' Motion to Remand (the "Response") [ECF No. 19] on October 5, 2023, and the Plaintiff filed its Reply in Support of the Motion to Remand [ECF No. 22] on October 12, 2023.

[2] Under 28 U.S.C. § 1446(c)(1), a "case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." But 28 U.S.C. § 1453(b) provides that a "class action may be removed to a district court of the United States in accordance with section 1446 [and] the 1-year limitation under section 1446(c)(1) shall not apply." The Defendant removed this case under the Class Action Fairness Act, so the one-year statute of limitations *probably* doesn't apply. In any event, because the Plaintiffs don't advance a timeliness argument in their Motion to Remand, they've forfeited any such argument here. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

Miami-Dade County, asserting one count for a pure bill of discovery. *See* Complaint [ECF No. 1-6] at 9–35. On June 28, 2019, while still in state court, the Plaintiffs filed an Amended Complaint against one Defendant, Security National Insurance Company—again asserting one count for a pure bill of discovery. *See* First Amended Complaint [ECF No. 1-6] at 177–203. On August 22, 2023, the Circuit Court of the Eleventh Judicial Circuit granted the Plaintiffs' Motion for Leave to File a Second Amended Complaint. *See* [ECF No. 1-6] at 439. That same day, the Plaintiffs filed their Second Amended Complaint (the "SAC") [ECF No. 1-2]. The SAC, brought as a putative class action, seeks declaratory relief and a bill of discovery. *See* SAC ¶¶ 74, 84. The putative class is defined as follows: "All non-governmental organizations and their assignees (collectively 'Secondary Payors'), that provide health and prescription benefits in the State of Florida to Members who are also insured by the Security National Insurance Defendant under a No-Fault, [Personal Injury Protection], or Med Pay insurance policies." *Id.* ¶ 53.

Later that same day (August 22, 2023), the Defendant removed this case to federal court under the provisions of 28 U.S.C. §§ 1331, 1332(d), 1441, 1446, and 1453. *See* Notice of Removal [ECF No. 1] at 1. The Defendant says that we have subject-matter jurisdiction over this case because "[a]ll requirements for removal under the Class Action Fairness Act ('CAFA') have been met," and because "the Second Amended Complaint presents a federal question, independently supporting removal[.]" *Id.* ¶¶ 3–4. On September 21, 2023, the Plaintiffs timely filed a Motion to Remand, arguing that the Defendant "fails to establish jurisdiction under [CAFA] as this action does not meet the amount in controversy thresholds required by 28 U.S.C. §§ 1332(a) [and] also fails to establish federal question jurisdiction." Motion to Remand at 1. The Plaintiffs also ask for "attorneys' fees and costs in connection with Defendant's improper removal pursuant to 28 U.S.C. § 1447(c)." *Ibid.*

## THE LAW

A federal court should remand to state court any case that has been improperly removed. *See* 28 U.S.C. § 1447(c). The party attempting to invoke the federal court's jurisdiction bears the burden of establishing that jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). "Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Indeed, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

In 2005, Congress enacted the Class Action Fairness Act ("CAFA"), PUB. L. NO. 109–2 § 2(b), 119 STAT. 4, "which amended the federal diversity jurisdiction statute, 28 U.S.C. § 1332, to provide special rules for class action lawsuits," *Smith v. Marcus & Millchap, Inc.*, 991 F.3d 1145, 1149–50 (11th Cir. 2021). "CAFA grants federal district courts jurisdiction over class actions where (1) any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant, (2) the aggregate amount in controversy exceeds $5 million, and (3) the proposed plaintiff class contains at least 100 members." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 911 (11th Cir. 2014); *see also* 28 U.S.C. § 1332(d)(2), (5)–(6). In CAFA actions, as in "traditional" cases, "the party seeking a federal venue must establish the venue's jurisdictional requirements." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1207 (11th Cir. 2007).

"Under the federal question jurisdiction statute, 28 U.S.C. § 1331, a district court has subject matter jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Smith v. GTE Corp.*, 236 F.3d 1292, 1310 (11th Cir. 2001) (quoting 28 U.S.C. § 1331).

3

"Whether a claim arises under federal law for purposes of 28 U.S.C. § 1331 is generally determined by the well-pleaded complaint rule, 'which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Ibid.* (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). In other words, "[f]ederal question jurisdiction exists only when the 'well-pleaded complaint standing alone establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997) (quoting *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983)).

Although courts continue to apply the well-pleaded-complaint rule, the Supreme Court has said that the delicate balance of federalism concerns has "kept [it] from stating a 'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). The Supreme Court has therefore refused to "treat[ ] 'federal issue' as a password opening federal courts to any state action embracing a point of federal law." *Ibid.* In evaluating whether the "particular factual circumstances of a case give rise to removal jurisdiction, we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (cleaned up); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.").

## ANALYSIS

### I. The Class Action Fairness Act

The Plaintiffs ask us to remand this case for two reasons: *One*, the Defendant (they say) "fails to establish jurisdiction under [CAFA] as this action does not meet the amount in controversy thresholds required by 28 U.S.C. §[ ] 1332(a)"; *two*, the Defendant (they insist) independently "fails to establish federal question jurisdiction." Motion to Remand at 1. On the first argument, we agree with the Plaintiffs that the Defendant hasn't established, by a preponderance of the evidence, that the amount in controversy exceeds $5 million, which is "required for federal subject matter jurisdiction under CAFA." *Dudley*, 778 F.3d at 910 (citing 28 U.S.C. § 1332(d)(2)). The Eleventh Circuit has "repeatedly held that the removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum." *Id.* at 913. "[I]n making this calculation, a court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *Ibid.*

In this case, the Plaintiffs' operative complaint—the Second Amended Complaint—seeks declaratory relief and a pure bill of discovery. *See* SAC ¶¶ 74, 84. In their first claim, the Plaintiffs request prospective declaratory relief to clarify the parties' "rights and obligations" under Florida law. *Id.* ¶ 77. Specifically, they ask for "declaratory relief under Florida's Declaratory Judgment Act set forth in Chapter 86 of the Florida Statutes, regarding the [Defendant's] failure to comply with its primary obligations pursuant to section 627.736(4), Florida Statutes, and the Plaintiffs' and the Class's obligations under sections 627.736(5) and 627.736(10), Florida Statutes." *Id.* ¶ 4. The Plaintiffs thus want us to enter the following decrees:

   a. Security National Insurance Defendant must determine whether its insureds are also Members covered by Secondary Payors, and if so, then, the Security National Insurance Defendant must coordinate benefits with Secondary Payors;
   b. Security National Insurance Defendant must alert Secondary Payors of its primary obligations pursuant to Fla. Stat. § 627.736(4);

      c. Unlike Healthcare Providers lawfully rendering treatment to an injured person for bodily injury covered by PIP insurance, Secondary Payors are not obligated to submit a demand for reimbursement on a properly completed 1500 Claim Form, UB 92 Form, or any other standard form under Fla. Stat. § 627.736(5)(d); and

      d. Secondary Payors are not obligated to comply with the strict requirements of Fla. Stat. § 627.736(10), when seeking reimbursement demands and that:

          i. Security National Insurance Defendant must notify the Secondary Payors of the name of the insured upon which such benefits are primary;

          ii. Secondary Payors are not required to provide a standard "assignment" typically given to providers by insureds; and

          iii. Security National Insurance Defendant must notify the Secondary Payors of the claim number or policy number upon which such claim was originally submitted to the Security National Insurance Defendant.

*Id.* ¶ 81. In their second claim (for a bill of discovery), the Plaintiffs "seek to obtain information that is in the exclusive possession of [the Defendant] to coordinate benefits," including "policyholder name and address; name and address of insurer or administrator; policy identification number or other identifier; claim identification number"; and so on. *Id.* ¶ 85. The Plaintiffs ask us to issue declaratory judgments on the "rights of the parties, grant the bill of discovery, and award the Plaintiffs their attorneys' fees and costs pursuant to Section 627.428, Florida Statutes[.]" *Id.* at 33.

      In its Notice of Removal, the Defendant maintains that the "$5 million CAFA amount in controversy requirement is satisfied" because the Plaintiffs "sent Defendant 'over 20 reimbursement demands' and filed '20 Civil Remedy Notices . . . to resolve these reimbursement demands.' . . . . Defendant has identified 10 of these 20 demands and calculated that the total amount sought in just these 10 letters is $3,890,031.68 . . . . Therefore, the Plaintiffs' own demands to Defendant, before even considering the claims of class members, almost certainly exceed $5 million." Notice of Removal ¶¶ 25–26 (quoting SAC ¶ 47). "Considering the potential claims brought on behalf of absent class members," the Defendant continues, "the total amount in controversy only balloons further." *Id.* ¶ 27.

      We disagree. The SAC alleges that the "Plaintiffs have not sought damages and instead are seeking prospective declaratory relief and a bill of discovery." Motion to Remand at 6. None of the

demand letters—which the Defendant relies on to establish the amount in controversy, and which the Plaintiffs sent to the Defendant in the ordinary course of business—are in any way at issue in *this* case. As Chief Judge Altonaga held in remanding a strikingly similar case:

> [I]f this were a lawsuit to recover on the Demand Letter's claim . . . it is possible the Court would have subject matter jurisdiction . . . . But Plaintiffs are not seeking to recover the amount in the Demand Letter, or any amount at all, in this lawsuit. The Demand Letter is merely an example of the type of claim Plaintiffs are seeking to potentially recover in the future. In other words, there are no specific reimbursement demands at issue in this case. Plaintiffs are merely trying to have access to information and obtain declaratory relief that could make it easier for them to recover on these types of claims in the future.

Order on Mot. to Remand, *MSP Recovery Claims, Series LLC et al. v. Zurich Am. Ins. Co. et al.*, 23-cv-22450 (S.D. Fla. Sept. 11, 2023) (Altonaga, C.J.), ECF No. 22 at 7–8. So too here. The Plaintiffs' demand letters (some of which are attached as Exhibits to the Motion to Remand[3]) are not the subject of this action, and there are no specific reimbursement demands at issue in this case.

The Defendant also tries to extrapolate the "value" of the Plaintiffs' requested declaratory relief far into the future, insisting that the "Plaintiffs' goal for the declaratory relief is to clear the path for collection on claims . . . . Those alleged claims, for a total amount in excess of $3.89 million, remain open and pending." Motion to Dismiss at 10. Two problems with this. For one thing, even if the Plaintiffs are "completely successful, and a declaratory judgment [is] entered stating that [the Defendant] ha[s] to provide the full relief sought," that would not "necessarily mean that [the Defendant] would be obligated to pay [the Plaintiffs] the amounts associated with the policies." Order on Mot. to Remand, *Zurich Am. Ins. Co.*, ECF No. 22 at 9. As Judge Gayles recently explained in remanding *another* (very) similar case:

> To establish the amount in controversy, Defendants ask the Court to assume Plaintiffs are successful in their potential future suits, estimating future damages of more than $50 million based on Plaintiffs' demand letters. But Plaintiffs allege no such details in the FAC or Proposed SAC. To the contrary, Plaintiffs merely seek a declaration of

---

[3] *See* Demand Letters and Responses [ECF Nos. 12-2, 12-3].

7

> Defendants' obligations and information that may be used to later bring a lawsuit against unspecified defendants for an unspecified sum . . . . Plaintiffs do not specify which Plaintiffs or which demand letters will be involved in potential lawsuits. Without such detail, Defendants cannot establish that the amount in controversy exceeds the threshold by a preponderance of the evidence: at best, it's rank speculation . . . .
>
> Though Plaintiffs might use the outcome of their declaratory claim as a basis for a future action that seeks monetary damages, that possibility does not negate the fact that there is no amount in controversy in this action . . . . Whether it is one demand letter or 811, Defendants cannot, with reasonable certainty, predict which demand letters or parties will be involved in any future litigation. At this time, the demand letters are merely examples of the claims information Plaintiffs seek. Thus, the Court finds that Defendants cannot establish the amount of controversy necessary for diversity or statutory jurisdiction.

Order on Mot. to Remand, *MSP Recovery Claims, Series LLC et al. v. Hartford Accident & Indem. Co., et al.*, 23-cv-22244 (S.D. Fla. Nov. 7, 2023) (Gayles, J.), ECF No. 28 at 8–9.

For another, "in estimating the amount that [the] [p]laintiff put at issue by seeking declaratory judgments, for amount in controversy purposes, the value of injunctive or declaratory relief is the value of the object of the litigation measured *from the plaintiff's perspective*." *Amkin Mgmt., LLC v. Am. Home Assurance Co.*, 2021 WL 6750537, at *3 (S.D. Fla. May 3, 2021) (Ungaro, J.) (emphasis added); *see also Gonzalez v. United States Ctr. for SafeSport*, 374 F. Supp. 3d 1284, 1295 (S.D. Fla. 2019) (Scola, J.) ("In actions seeking declaratory relief . . . it is well established that the matter in controversy is measured by the value of the object of the litigation. This determination is made by measuring the value of the object of litigation solely from the plaintiff's perspective." (cleaned up)). And, as we've explained, the Plaintiffs do not value their requested declaratory relief at over five million dollars. On the contrary, they say that "[n]o money damages are sought" through this action—and that (as a result) "there is no amount in controversy." Motion to Remand at 8.

Still resisting, the Defendant notes that, according to the Eleventh Circuit, "the value of declaratory relief is the monetary value of the benefit that would flow to the plaintiff if the relief he is seeking were granted. For CAFA purposes, we aggregate the claims of individual class members and consider the monetary value that would flow to the entire class if declaratory relief were granted." *S.*

*Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (cleaned up). That's all true—but it doesn't help the Defendant here because, in a sentence the Defendant chooses *not* to quote, the Eleventh Circuit made clear that "the value of declaratory or injunctive relief must be sufficiently *measurable and certain* to satisfy the amount-in-controversy requirement . . . . That requirement is not satisfied if the value of the equitable relief is too speculative and immeasurable." *Ibid.* (cleaned up & emphasis added). In our case, the "amount in controversy remains speculative and uncertain," Order on Mot. to Remand, *Zurich Am. Ins. Co.*, ECF No. 22 at 10, because it's not at all clear how (or whether) our interpretation of FLA. STAT. §§ 627.736(4), 627.736(5), and 627.736(10), would impact the Plaintiffs' recovery on future claims, *see Amkin Mgmt.*, 2021 WL 6750537, at *3 ("What happens after the resolution of the declaratory judgment issues is impossible to predict at this juncture. Speculation that it may dispositively resolve issues relating to the $32 million claim are unsubstantiated, and do not provide a sufficient basis to satisfy the $75,000 amount in controversy requirement to provide jurisdiction for this [c]ourt."). We, therefore, reject the Defendant's attempt to look into the future and to aggregate the expected value of the Plaintiffs' requested declaratory relief.

## II. Federal-Question Jurisdiction

In their second remand argument, the Plaintiffs say that "[t]here is no federal question presented in this action" because no "federal question is presented on the face of the [Plaintiffs'] properly pleaded complaint." Motion to Remand at 13. In saying so, they point out that "[t]he SAC does not seek relief under the MSP Act's private cause of action" and that the "claims asserted for prospective declaratory relief . . . arise under Florida's expansive Declaratory Relief Act and Florida's Motor Vehicle No Fault law." *Id.* at 14. Finally, the Plaintiffs contend that "[a]ny federal question here is unexceptional and tangential; it is at most a minor issue capable of resolution in state court without upsetting the federal-state balance . . . . [T]here is no question that the Defendant is a primary payer or that the Plaintiffs' assignors are secondary payers entitled to reimbursement under the MSP Act.

9

Certainly, the SAC assumes this to be true. The controversy here is whether and when the Secondary Payers must comply with discrete pre-suit notice requirements under the Defendant's written policies and under Florida's No-Fault and PIP law." *Id.* at 15. The Defendant, for its part, counters that the "Plaintiffs' request for declaratory relief regarding the obligations of Defendant to coordinate benefits vis-à-vis [Medicare Advantage Organizations ('MAOs')] presents a federal question because the resolution of that issue necessarily depends on the resolution of a substantial question of federal law concerning the MSP Act." Response at 15.

"[I]n the absence of a federally created cause of action, 'in limited circumstances, federal-question jurisdiction may [ ] be available if a substantial, disputed question of federal law is a necessary element of a state cause of action.'" *Brown v. Endo Pharms., Inc.*, 38 F. Supp. 3d 1312, 1319 (S.D. Ala. 2014) (quoting *Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998)). A "substantial" question of federal law is one that is "importan[t]" to "the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013); *see also Bollea v. Clem*, 937 F. Supp. 2d 1344, 1353 (M.D. Fla. 2013) (Whittemore, J.) ("Issues that will 'change the real-world result' for future cases and future litigants are substantial." (quoting *Gunn*, 568 U.S. at 260)).

After carefully reviewing the SAC, we agree with the Plaintiffs that their right to relief does not depend on our resolution of a substantial question of federal law. It's undisputed that the Plaintiffs advance no federal claims: The SAC doesn't seek relief under the MSP Act's private cause of action, and the Plaintiffs assert their claims *only* under state law. *See* SAC ¶ 74 (requesting declaratory relief "pursuant to Chapter 86, Florida Statutes"); *id.* ¶¶ 84–90 (laying out a claim for a pure bill of discovery under Florida law); Response at 15 (arguing that the SAC "attempts to defeat removal by omitting to plead necessary federal questions" (cleaned up)). In their claim for declaratory relief, moreover, the Plaintiffs make clear that they're "in doubt concerning their rights" under *Florida* (not federal) law and that "a bona fide present controversy exists between the Plaintiffs, the Class, and the [Defendant]

concerning the proper interpretation of Sections 627.736(4), 627.736(5), and 627.736(10), Florida Statutes[.]" SAC ¶ 81. As redress, they seek a variety of declaratory decrees aimed at clarifying the parties' obligations under these *Florida* (not federal) statutes. For example, they ask us to declare that the "Defendant must alert Secondary Payors of its primary obligations pursuant to Fla. Stat. § 627.736(4)" and that "Secondary Payors are not obligated to comply with the strict requirements of Fla. Stat. § 627.736(10), when seeking reimbursement demands." *Ibid.*

Despite all this, the Defendant insists that "federal question jurisdiction . . . nevertheless attach[es]" to the Plaintiff's claim for declaratory relief because, "[t]o consider the declaration sought, this Court must interpret the MSP Act." *Id.* at 15–16. The Defendant adds:

> Plaintiffs seek declaratory relief as to the obligation of Defendant to coordinate benefits with "Secondary Payors," which Plaintiffs define to include MAOs. *See* SAC ¶ 81, n.1. Specifically, Plaintiffs request a declaration that Defendant "must determine whether its insureds are also Members covered by Secondary Payors, and if so, then, the . . . Defendant must coordinate benefits with Secondary Payors." *See id.* ¶ 81(a).
>
> The coordination of benefits between insurers like Defendant and MAOs is governed by federal law. In particular, the federal MSP Act and its implementing regulations specifically set forth the obligations of MAOs and insurers that may be "primary payers" with respect to the coordination of benefits. *See* 42 U.S.C. § 1395y(b)(4)-(8) (detailing coordination of benefits and information sharing obligations); *see also* 42 C.F.R. § 422.108(b)[;] *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2019 WL 6311987, at *6 (C.D. Ill. Nov. 25, 2019), *aff'd*, 994 F.3d 869 (7th Cir. 2021) ("[T]he implementing regulations require MAOs to identify and coordinate with primary insurers.").

Response at 15–16.

Again, we're not persuaded. On November 8, 2023, Chief Judge Altonaga rejected this exact same argument in an order remanding a virtually identical case. *See* Order Granting Mot. to Remand, *MSP Recovery Claims, Series LLC et al. v. The Travelers Cas. Co. et al.*, 23-cv-23156 (S.D. Fla. Nov. 8, 2023) (Altonaga, C.J.), ECF No. 23. In her order, Chief Judge Altonaga *specifically rejected* the proposition (which the Defendants repackage here) that, because the MSP Act governs the coordination of

11

benefits in *some* contexts, the Plaintiffs' request that we determine the proper coordination of benefits under *state* law necessarily hinges on a substantial question of *federal* law. In her words:

> Defendants argue that the relief Plaintiffs seek "arises under federal law" because the subject of their requested declaratory relief is the coordination of benefits, and the coordination of benefits "is expressly governed by federal law." As previously explained, however, Plaintiffs claim only a right to relief under Florida law; the basis of their claim for declaratory relief is that Florida statutes impose certain obligations on Defendants, which Defendants must now honor. *See* [FLA. STAT. §§ 627.736(1), (4)–(5)]. Because these claims arise under state law, they do not obviously give rise to federal question jurisdiction.
>
> Undeterred, Defendants argue that the Court's analysis must consider the federal framework for coordination of benefits because Plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal law, and, therefore, federal question jurisdiction may attach to the state-law claim . . . . But "[t]he fact that a court must . . . construe federal law to determine whether the plaintiff is entitled to relief will not confer federal subject matter jurisdiction — the implicated federal issue must be substantial." *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1291–92 (11th Cir. 2004) . . . . Defendants point to the possibility that federal law may foreclose the declaratory relief that Plaintiffs seek and call this a "substantial question of federal law . . . [whose resolution] will necessarily depend on the construction of the MSP Act and its implementing regulations."
>
> Assuming without deciding that Defendants are correct, this argument is at best a defense that can be raised after the state court has addressed Plaintiffs' state law claims — and even then, only if the state court agrees with Plaintiffs. If the state court disagrees that Plaintiffs have a right to declaratory relief under state law, the federal framework will not be implicated at all. This conditional connection to federal law is not enough; the test for federal question jurisdiction "look[s] to the face of the complaint rather than to defenses, for the existence of a federal question." *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1178 (11th Cir. 2006) (alteration added; citation omitted); *see also Dunlap*, 381 F.3d at 1292 (reversing district court's exercise of jurisdiction where "the only potential issue involving federal law . . . would be raised only as a defense after [the plaintiff] had successfully established the existence of a valid contract under state law[.]").

Order Granting Mot. to Remand, *The Travelers Cas. Co.*, ECF No. 23 at 13–14.

We agree with our Chief's well-reasoned analysis and adopt this portion of *Travelers Casualty* in full. As in *Travelers Casualty*, our Plaintiffs seek only declaratory relief related to "the parties' rights and obligations under Florida state insurance law." Motion to Remand at 13. And (again, as in *Travelers Casualty*) it's not at all obvious that the Plaintiffs have a right to declaratory relief, in which case the

MSP Act would *never* be implicated. In any event, even if the Defendant is right that a court will (one day) need to interpret the MSP Act to give the Plaintiffs the declaratory relief they've requested, "[t]he mere fact that a court must apply or interpret federal law to determine whether [a] plaintiff is entitled to relief is not sufficient to confer federal question jurisdiction." *Austin v. Ameriquest Mortg. Co.*, 510 F. Supp. 2d 1218, 1226 (N.D. Ga. 2007).

The Plaintiffs (it's true) note that the "sole controversy for which class certification was sought is one of policy language and statutory construction in light of the 11th Circuit's recent opinion in *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314 (11th Cir. 2023)[,] which expressly held that the Medicare Secondary Payer Act does not preempt F.S. Section 627.736(10)." Motion to Remand at 12–13. But, as Chief Judge Altonaga noted in *Travelers Casualty*, even if the Eleventh Circuit's decision in *United Auto* spurred the Plaintiffs to seek class certification in this case, "the Eleventh Circuit's decision resolved a federal issue, and the remaining issue raised by Plaintiffs is the impact of that decision on state law. This is not a federal issue, nor is it a question that the Court needs to resolve; after all, 'state courts are generally presumed competent to interpret and apply federal law.'" Order Granting Mot. to Remand, *The Travelers Cas. Co.*, ECF No. 23 at 13 n.10 (quoting *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1301 (11th Cir. 2008)). After all, the existence of a "federal issue" is not "a password opening federal courts to any state action embracing a point of federal law." *Grable*, 545 U.S. at 314. And, under the well-pleaded-complaint rule, "the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. For all these reasons, we disagree that the Plaintiff's SAC arises under federal law.

### III.   Attorneys' Fees

"When a case is remanded due to improper removal, the court may award the plaintiff attorneys' fees and costs." *Point Conversion, LLC v. Tropical Paradise Resorts, LLC*, 339 F. Supp. 3d 1350, 1358 (S.D. Fla. 2018) (Altonaga, J.) (citing 28 U.S.C. § 1447(c)). "[T]he standard for awarding fees

13

should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Although we've agreed to remand this case back to state court, we don't think the Defendant lacked an objectively reasonable basis for seeking removal. Significantly, we've relied in this Order on two cases—*Travelers Casualty* and *Hartford Accident & Indemnity*—that were decided *after* the Defendant removed this case. *See generally* Notice of Removal. Because our rationale for remand leans on the reasoning in these two recent cases, we cannot say that the Defendant acted unreasonably in seeking our federal jurisdiction. We therefore **DENY** the Plaintiffs' motion for attorneys' fees and costs.

\*     \*     \*

After careful review, therefore, we hereby **ORDER and ADJUDGE** as follows:

1. The Plaintiff's Motion to Remand [ECF No. 12] is **GRANTED** as to the request for a remand and **DENIED** with respect to the request for attorneys' fees and costs.
2. The case is **REMANDED** to the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida.
3. The Clerk of Court is directed to **CLOSE** this case. All pending deadlines and hearings are **TERMINATED**, and any pending motions, including the Defendant's Motion to Dismiss [ECF No. 11], are **DENIED AS MOOT**.

**DONE AND ORDERED** in the Southern District of Florida on November 17, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record